UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MUSTAFA T. KACHWALLA, et al., *Plaintiffs*, v. TOWNSHIP OF EDISON, et al., *Defendants*. | No. 21-cv-13944(MEF)(JBC) **SEALED** **OPINION and ORDER** |

**Table of Contents**

**I.   Background**
    **A.   The Allegations**
    **B.   The Lawsuit**
    **C.   Procedural History**
    **D.   The Motion**
    **E.   The Court's Approach**
**II.  The Law**
**III. Applying the Law**
    **A.   Plaintiff's Conduct/Motives**
    **B.   Prejudice to the Defendants**
**IV.  Conclusion**

\* \* \*

Officials executed a search warrant at a house.

Certain residents of the house later sued. One was a minor, who was represented by her parents, together acting as her guardians ad litem.

The guardians now move to dismiss their minor child's claims without prejudice.

The motion is granted.

*   *   *

## I. Background

### A. The Allegations

The relevant allegations for now are as follows.

In 2019, law enforcement officers searched a house on suspicion that a person staying there was illegally selling guns.  See Complaint ¶¶ 24-26, 30, 34.  During the search, the officers handcuffed certain people, see id. ¶ 39, and, among other things, were said to have "ransacked" the house.  See id. ¶ 51.

### B. The Lawsuit

In light of the above, a number of the residents of the house filed a lawsuit.

The suit named various local government entities and officials. They are referred to from here, collectively, as "the Defendants."[1]

One of the residents who sued is identified in the Complaint as "A.K."  She was a minor at the time the lawsuit got underway. See id. ¶ 39; Motion to Dismiss, Espinosa Certification ¶ 5.  As to A.K., the lawsuit was initiated by her parents,[2] see Complaint ¶ 29, acting as her guardians ad litem, see id. ¶ 2.

### C. Procedural History

In 2021, the lawsuit was filed.  In 2023, it was re-assigned to the undersigned.

---

[1] The Defendants: Township of Edison, Woodbridge Township, Edison Police Department, Woodbridge Police Department, Daniel Hansson, an individual identified as Officer Palko, Michael W. Palatella, Brian Mieczkowski, Christopher Sorber, Mike Michalski, Charles Zundel, Loren Long, Fred Brown, Robert Ellmyer, Tim Hutson, Joe Bench, and Ray Powers.

[2] Mustufa T. Kachwalla and Debra Kachwalla.

2

Fact discovery is now mainly wrapped up.  See Defendants' Letter (Apr. 16, 2024).

But there are two loose ends.

First, the deposition of A.K. has not yet been taken.  See id.  The parties worked to schedule the deposition, but A.K. --- who is still a minor, see Motion to Dismiss, Kachwalla Certification ¶ d --- declined to participate, and has generally refused to speak with either side's counsel about the case.  See Motion to Dismiss, Espinosa Certification ¶¶ 4-5; id., Kachwalla Certification ¶¶ b-c; see also Reply Brief, Kachwalla Certification ¶ 6-8; Defendants' Letter (Apr. 16, 2024); Defendants' Letter (Aug. 30, 2023).

And second, there has not yet been a medical examination of A.K.  See Defendants' Letter (Apr. 16, 2024).  Same basic reason: A.K. has declined the examination.  See Motion to Dismiss, Kachwalla Certification ¶ b.

### D. The Motion

A.K.'s guardians ad litem now move to dismiss A.K. from the case without prejudice.

Their core argument: A.K. becomes intensely distraught when asked to speak about the underlying allegations, and therefore should be dismissed.  See Motion to Dismiss at 2; see also id., Espinosa Certification ¶¶ 4-5 (providing further detail); id., Kachwalla Certification ¶¶ b-c, e (same).

The Defendants' response: if A.K.'s claims are to be dismissed, they should be dismissed with prejudice.  See Opposition Brief at 5.

### E. The Court's Approach

The Court briefly lays out the governing legal principles here, see Part II, and then analyzes both the conduct and motives of the guardians and A.K., see Part III.A, and any possible prejudice to the Defendants, see Part III.B.  The Court's conclusion: the motion to dismiss without prejudice should be granted.  See Part IV.

3

## II.  The Law

Under Federal Rule of Civil Procedure 41(a)(2), after an answer has been filed "an action may be dismissed at the plaintiff's request only by court order."  Fed. R. Civ. P. 41(a)(2).

Here, Rule 41(a)(2) applies because answers were filed before the motion for dismissal.

The Third Circuit has adopted a "liberal policy" in favor of dismissal under Rule 41(a)(2).  In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 863 (3d Cir. 1990); accord, e.g., In re Innovative Commc'n Corp., 567 F. App'x 109, 112 (3d Cir. 2014); Baldinger v. Cronin, 535 F. App'x 78, 80 (3d Cir. 2013).  And it has explained that whether to grant a Rule 41 dismissal motion is within a district court's discretion.  See Est. of Ware v. Hosp. of the Univ. of Pa., 871 F.3d 273, 285 (3d Cir. 2017) ("once an answer has been filed, whether to permit dismissal is left to the discretion of the District Court") (citing Ferguson v. Eakle, 492 F.2d 26, 28 (3d Cir. 1974)); accord, e.g., Baldinger, 535 F. App'x at 80.

In setting out its "liberal policy," the Court of Appeals has often used a verbal formulation that focuses solely on whether the dismissal being sought will prejudice the relevant defendant or defendants.  See In re Paoli, 916 F.2d at 863 ("Rule 41 motions should be allowed unless [the] defendant will suffer some prejudice other than the mere prospect of a second lawsuit.") (cleaned up); Est. of Ware, 871 F.3d at 285 (same); Polansky v. Exec. Health Res. Inc., 17 F.4th 376, 390 (3d Cir. 2021) (same); Hayden v. Westfield Ins. Co., 586 F. App'x 835, 842 (3d Cir. 2014) (same).

But the cases make clear that the Third Circuit's field of vision is not cropped in this way.  The Court of Appeals looks to prejudice that might fall on the defendant because of a Rule 41(a)(2) dismissal.  But it also keeps an eye on the other side of the ledger, and considers the conduct and motivations of the plaintiff who is seeking the dismissal.

For example, in Ferguson v. Eakle, the Third Circuit analyzed the issue of prejudice to the defendants, and determined that the lower court had abused its discretion in granting a motion for dismissal.  492 F.2d at 28-29.  The Court of Appeals explained that this "conclusion is buttressed by analyzing the

4

plaintiffs' primary reason for seeking dismissal: the desire to sue [the defendant] in an[other] action at law seeking damages." Id. at 29.

And another example: Hayden v. Westfield Insurance Co. There, the Third Circuit assessed whether there was prejudice to the defendant. See 586 F. App'x at 842. But it also folded into the mix an analysis of the plaintiff's motive --- in that case, the plaintiff's desire to dismiss the case so as to litigate in state court, not federal. See id. at 843.

The Third Circuit's Rule 41 approach is, in short, zoomed out --- it focuses not only on the defendant, but also on the plaintiff.

A broad, defendants-and-also-plaintiffs approach is how the District Courts of the Third Circuit have tended to proceed. See, e.g., Pringle v. Johnson & Johnson, Inc., 2024 WL 3850379, at *3 (D.N.J. Aug. 16, 2024) (denying a Rule 41 motion for dismissal because the plaintiff was simply seeking a "do-over" to avoid an adverse ruling); Elsevier, Inc. v. Comprehensive Microfilm & Scanning Servs., Inc., 2012 WL 727943, at *3 (M.D. Pa. Mar. 6, 2012) ("Discovery in this case has progressed significantly, and the Court is unwilling to allow Plaintiffs to withdraw their claim at this late stage, which attempt was undertaken solely for tactical reasons."); cf. United States ex rel. Haskins v. Omega Inst., Inc., 11 F. Supp. 2d 555, 570 (D.N.J. 1998) ("In addressing a Rule 41(a)(2) motion, a court must weigh the relevant equities and do justice between the parties in each case.").

And this approach has been taken by other federal courts. See generally 8 Moore's Federal Practice - Civil § 41.40 (2024) (noting that in many circuits a focus on the good faith of the plaintiff weighs in the Rule 41(a)(2) balance).

Bottom line: in assessing a Rule 41(a)(2) motion for dismissal, a court may consider not only prejudice to the defendant, but also the conduct and motives of the plaintiff.

### III. Applying the Law

Applying the approach set out just above, the Court first looks to the conduct of A.K. and her guardians ad litem, see Part

5

III.A, before considering the potential prejudice to the Defendants of granting a motion to dismiss, see Part III.B.

### A.   Plaintiff's Conduct/Motives

In assessing the conduct and motives of a plaintiff who seeks dismissal, a core inquiry is whether improper "gamesmanship," Ewideh v. Homesite Ins. Co. of the Midwest, 2023 WL 5170379, at *3 (M.D. Pa. July 17, 2023), is potentially at play.

For example, is the plaintiff seeking to walk away from her case in Forum 1 so she can go forward in Forum 2 for reasons that are at odds with the integrity of the truth-seeking process --- because it will be harder for the defendant to get his key trial witnesses to Forum 2?

Does Forum 2 belatedly seem favorable to the plaintiff from the perspective of choice of law, see Kenney v. Celotex Corp., 1986 WL 177, at *1 (E.D. Pa. Apr. 8, 1986), or a statute of limitations, see Bamdad Mech. Co. v. United Techs. Corp., 109 F.R.D. 128, 131 (D. Del. 1985)?  Does the plaintiff's change of heart suggest bad faith?  What if going forward in Forum 2 made better sense all along?  See generally Shappell v. PPL Corp., 2007 WL 893910, at *3 (D.N.J. Mar. 21, 2007) (granting Rule 41 motion in part "because state law claims pervade the dispute," such that "it is logical for the parties to proceed in state court").

Does the plaintiff want to refile somewhere else as a way to dodge an unfavorable judicial ruling?  Or maybe she wants a "do-over" --- perhaps the court-set discovery deadline has come and gone, but the plaintiff wants more documents and depositions and imagines she will be able to get them by moving to another courthouse.  See Pringle, 2024 WL 3850379, at *3; see also, e.g., McGoveran v. Amazon Web Servs., Inc., 2024 WL 4533598, at *5-6 (D. Del. Oct. 18, 2024) (denying a motion for voluntary dismissal that was motivated by certain plaintiffs' desire to reopen fact discovery).

In some cases, the sorts of issues sketched out above may present complex issues.

But not here.  There is no suggestion in the record that A.K. or her guardians ad litem are trying to sidestep this Court because they want to file somewhere else.  Indeed, it appears that A.K. may well want nothing to do with any case related to the house-

search that is challenged here.  See Reply Brief, Kachwalla Certification ¶¶ 3-8.

And not only is there no suggestion that A.K. is seeking to pull herself into another forum --- there is no reason to think she might be trying to push herself out of this to advance an overarching litigation strategy.  The parties point to no adverse rulings here that touch on A.K., and no one spotlights any case-related developments that A.K. might be trying to get out from under.

And moreover: there is no reason to think A.K.'s guardians ad litem have sat on their hands, taking too long to move for dismissal under Rule 41(a)(2).  See generally Shamrock Creek, LLC v. Borough of Paramus, 2015 WL 3902307, at *2 (D.N.J. June 23, 2015) (a plaintiff's diligence can be relevant to consideration of a Rule 41 motion).

It is true that almost three years ran off the clock between the time the Complaint was filed and the moment when the guardians moved to dismiss A.K.'s claims.  This is a long time.  And in the ordinary case, a lapse like this could well cut against granting a Rule 41 dismissal motion.  See Hayden, 586 F. App'x at 843 (denying a motion to dismiss that "came seventeen months after the start of litigation and six months after the close of discovery"); Ferguson, 494 F.2d at 29 (denying a motion made fourteen months after the litigation began).

But in this case, the parties did not begin trying to schedule A.K.'s deposition until August 2023.  See Opposition Brief, Statement of Additional Material Facts ¶¶ 1, 3-4.  The other plaintiffs were deposed between August and October 2023, see id. at ¶¶ 3-4, and the parties subsequently engaged in back-and-forth efforts to schedule A.K.'s deposition and medical examination.  See id. ¶¶ 3-20.  After that process wrapped up unsuccessfully, and it became apparent that A.K. would not participate, the Rule 41(a)(2) motion was filed relatively promptly, during May of 2024.  See Motion to Dismiss at 8.

Bottom line: there is no suggestion here of gamesmanship or too much delay.

7

A.K. was brought into this case as a minor,[3] and she remains a minor. See Complaint ¶ 39; Motion to Dismiss, Espinosa Certification ¶ 5. The only inference from the uncontested facts is that A.K. is a young person who, for personal reasons that are apparently intensely felt, does not want to participate in a case that relates to the complained-of search of her house. See Motion to Dismiss, Espinosa Certification ¶¶ 4-6; id., Kachwalla Certification ¶¶ b-c, f.

There is simply no evidence of an instrumental or tactical approach on A.K.'s part, of an effort by her to accomplish something there (maybe in another case) by doing something here (withdrawing from this case). A.K., for example, has refused to work with the Defendants' lawyers when it comes to deposition scheduling. But she has also refused to work with her own lawyers. That sounds like someone trying to get out of a case, not a person looking to get a leg up.

And note: there is no hint in the record of improper motives or conduct from A.K.'s guardians ad litem, or of any effort on their part to secure a litigation advantage through dismissal. There is, for example, no evidence that A.K.'s guardians encouraged her not to sit for a deposition or to walk away from this lawsuit. Three years ago, A.K.'s parents may have misjudged whether their daughter would want to see this lawsuit through to the end. But standing alone, that is no indicator of bad faith.

In sum: a look to the Plaintiff's conduct and motives does not imply any reason to deny the Rule 41 dismissal motion.

### B. Prejudice to the Defendants

Come now to the other side of the ledger: prejudice to the Defendants. See generally Part II.

Here, there is relatively little.

Look first to this case as it stands today. There are four current plaintiffs in addition to A.K. The Defendants point to no incremental resources they specifically expended litigating against A.K. A.K. was not deposed, so no time was spent on that. And the Defendants do not spotlight legal or factual

---

[3] The parties have presented no information as to whether A.K. affirmatively consented to taking part in the litigation.

8

arguments they invested in developing that are particular in some way to A.K. See, e.g., Sery v. Fed. Bus. Ctrs., Inc., 616 F. Supp. 2d 496, 504 (D.N.J. 2008) (describing progress in the litigation that weighed in favor of denying a Rule 41 motion for dismissal); Sporn v. Ocean Colony Condo. Ass'n, 173 F. Supp. 2d 244, 255 (D.N.J. 2001) (same); cf. Gospel Outreach Christian Fellowship of N.J. v. Davies, 2006 WL 8457728, at *4 (D.N.J. June 22, 2006).

And second, look to this case as it will unfold over the coming months. There are, as noted, four current plaintiffs other than A.K. --- and the Defendants do not contend that they will fare better as to those four with A.K. at the table for trial.

In short: it does not appear that the Defendants "will suffer some prejudice other than the mere prospect of a second lawsuit," In re Paoli, 916 F.2d at 863, and Third Circuit precedent therefore weighs in favor of dismissal without prejudice. See id.

And indeed, the "prospect of a second lawsuit" is, for now at least, a remote one. There is, as noted above, no suggestion that A.K. has filed a case somewhere else, or is looking to. If she eventually goes down that road, that will certainly be inefficient --- the Defendants would presumably have wanted to resolve all of the relevant allegations in one case rather than two. But there is every reason to think that the work that has been done in this case (depositions, etc.) would largely carry over, and be usable in another case, if that comes to pass. See, e.g., Wei Mon Indus. Co. v. Chien, 2016 WL 6154904, at *2 (D.N.J. Oct. 21, 2016) (granting a motion for Rule 41 dismissal, in part because there was "no indication that the evidence discovered thus far would be either unnecessary or unusable in a future action"); Shappell, 2007 WL 893910, at *2 (making a similar point).

## IV.   Conclusion

For the reasons set forth above, the motion to dismiss A.K.'s claims without prejudice is granted.

IT IS on this 19th day of November, 2024, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.